IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| HAZEL I. CRUZ-VAZQUEZ, et al.,<br><br>    Plaintiffs<br><br>        v.<br><br>MENNONITE GENERAL HOSPITAL, INC., et al.,<br><br>    Defendants | CIVIL NO. 08-1236 (JAF/JP) |

**OPINION AND ORDER**

    The Court held a hearing in this case on August 16, 2011. At the hearing, the Court heard the parties on the issue of settlement of the case and the issue of whether the Court properly had jurisdiction. Pending before the Court is Defendants' motion to dismiss for lack of jurisdiction (**Docket No. 139**) and Plaintiffs' memorandum in opposition (Docket No. 136). Upon reconsideration of the Court's previous Opinion and Order (Docket No. 132) and for the reasons provided herein, the Court hereby **GRANTS** Defendants' motion to dismiss for lack of jurisdiction. Accordingly, the Court **VACATES** its Opinion and Order at Docket No. 132.

**I.**

**INTRODUCTION AND PROCEDURAL BACKGROUND**

    On August 15, 2011, the Court entered an Opinion and Order denying Defendants' motion for summary judgment (Docket No. 132). At

CIVIL NO. 08-1236 (JAF/JP)      -2-

the hearing held on August 16, 2011 and in their motion for summary judgment, Defendants argued that Plaintiffs did not present sufficient evidence to support a finding that Defendants failed to provide an appropriate screening to Plaintiff Hazel I. Cruz-Vazquez ("Cruz") upon her arrival to Defendant Mennonite General Hospital, Inc.'s ("Mennonite" or "Hospital") emergency room as required by the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. Thus, Defendants argue that the Court should decline to exercise jurisdiction over Plaintiffs' state law medical malpractice claims. After hearing the parties again on the issue of jurisdiction, the Court ordered the parties to file supplemental briefs on the issue of jurisdiction. The parties subsequently filed supplemental briefs (Docket Nos. 136, 139), and Defendants moved to dismiss for lack of federal jurisdiction (Docket No. 139).

In this case, Plaintiff Cruz arrived at the emergency room of Mennonite around 10:15 p.m. on January 4, 2007 complaining of vaginal discharge and blood spotting and requesting medical services. She denied having pelvic pain or dysuria, did not have a fever, and was feeling fetal movements. At that time, Cruz was in her third trimester of pregnancy, at 27 4/7 weeks. Upon her arrival, Cruz was evaluated by Dr. Brenda M. Torres-Perez ("Dr. Torres") who performed a vaginal or pelvic exam on Cruz; Dr. Torres found that Cruz's cervix was not dilated. Thereafter, around 10:55 p.m., Dr. Torres called Cruz's obstetrician, Dr. Eduardo Gomez-Torres ("Dr. Gomez"), who

CIVIL NO. 08-1236 (JAF/JP)        -3-

advised that Dr. Torres should administer Bretine and Vistaryl so that Cruz could be discharged in a stable condition. Dr. Gomez also advised that Cruz should follow-up the next morning at Dr. Gomez's private office. The parties stipulate that these instructions were followed. Cruz was sent home at 12:15 a.m., less than two hours after her arrival at the emergency room.

The next morning, the record shows that Cruz was examined by Dr. Gomez at his office around 8:14 a.m. and was complaining of blood spotting, which had been occurring since the previous night. Upon examining Cruz, Dr. Gomez found a blood collection pool in Cruz's vagina, and found that Cruz was dilated seven (7) centimeters with bulging membranes. He also found that the baby was floating in the breach position and that the fetal cardiac rhythm was 142 beats per minute. Thereafter, Cruz was transferred to the San Juan City Hospital where a cesarean section was performed and Cruz's baby was born prematurely, with a weight of two pounds and fourteen ounces. The baby died two days later on January 7, 2007.

**II.**

**LEGAL STANDARD**

EMTALA is an "anti-dumping" statute which was enacted by Congress in response to concerns about the increasing number of reports that emergency rooms were refusing to accept or treat uninsured patients with emergency medical conditions. <u>Correa v. Hosp.</u>

CIVIL NO. 08-1236 (JAF/JP)        -4-

San Francisco, 69 F.3d 1184, 1189 (1st Cir. 1995) (internal citation omitted).

The statute imposes two categories of obligations upon hospitals. First, it requires that hospitals provide an appropriate medical screening to all individuals who come to the hospital's emergency room seeking assistance. 42 U.S.C. § 1395dd(a); Correa, 69 F.3d at 1190. Second, EMTALA requires that if an emergency medical condition exists, the hospital must render the services that are necessary to stabilize the patient's condition, unless transferring the patient to another facility is medically indicated and can be accomplished with relative safety. See 42 U.S.C. § 1395dd(b); Correa, 69 F.3d at 1190. A plaintiff can bring a cause of action under either the screening or stabilization provisions of EMTALA, or both. See Benítez-Rodríguez v. Hosp. Pavía Hato Rey, Inc., 588 F. Supp. 2d 210, 214 (D.P.R. 2008).

EMTALA was not intended to be a federal medical malpractice statute, but rather a federal law that provided a remedy for emergency care patients where state malpractice provisions fell short. Correa, 69 F.3d at 1192; see Reynolds v. MaineGeneral Health, 218 F.3d 78, 83 (1st Cir. 2000). Although EMTALA does not define what appropriate medical screening entails, the case law has defined this duty as providing an examination "reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients and provides that level of screening uniformly

CIVIL NO. 08-1236 (JAF/JP)      -5-

to all those who present substantially similar complaints." <u>Correa</u>, 69 F.3d at 1192; see <u>Guadalupe v. Negrón-Agosto</u>, 299 F.3d 15, 20 (1st Cir. 2002).

The First Circuit Court of Appeals has explained that "a refusal to follow regular screening procedures in a particular instance contravenes the statute [], but faulty screening, in a particular case, as opposed to disparate screening or refusing to screen at all, does not contravene the statute." <u>Correa</u>, 69 F.3d at 1192-93 (internal citation omitted). In <u>Correa</u>, the First Circuit found that the hospital's "delay in attending to the patient was so egregious and lacking in justification" that it amounted "to an effective denial of a screening examination." <u>Id</u>. at 1193.

**III.**

**ANALYSIS**

**A.   Plaintiffs' EMTALA Claim**

In the instant case, Plaintiffs argue that Cruz was not given an appropriate medical screening because Dr. Torres should have conducted additional examinations and laboratory tests on Plaintiff Cruz before releasing her as per the Hospital's established protocol. Plaintiffs point to the existence of the Hospital's "Gravid with 3rd Trimester Bleeding" protocol which required certain tests to be performed. According to Plaintiffs, because the additional tests were

CIVIL NO. 08-1236 (JAF/JP)        -6-

not performed on Cruz, Cruz was given disparate treatment in violation of EMTALA.

As to this particular patient, however, Dr. Torres made a medical judgment not to perform additional tests after performing the pelvic examination on Cruz, establishing that she was not experiencing any pain, and consulting Cruz's private physician. Dr. Torres' decision not to perform additional tests is not the same as the denial of screening or egregious delay in screening identified by the First Circuit in Correa. See Reynolds, 218 F.3d at 83-84 (finding that plaintiffs' claim that the patient received disparate treatment because the hospital did not take the patient's "complete medical history" as per the hospital's written policy was "an attempt to bring a malpractice standard into the interpretation and application of [EMTALA]" and that "[i]t is not enough to proffer expert testimony as to what treatment *should* have been provided to a patient in [the plaintiff's] condition")(emphasis in original). Dr. Torres' decision not to conduct additional tests had nothing to do with Cruz' ability to pay but rather with her assessment of Cruz's medical condition. See Vickers v. Nash Gen. Hosp., Inc., 78 F.3d 139, 144 (4th Cir. 1996)(affirming district court's grant of dismissal of EMTALA disparate screening claim where doctor treated patient for what he "'perceived to be' the [patient's] medical condition" and that in the doctor's "medical judgment ... [the condition] did not warrant testing for intracranial injury").

CIVIL NO. 08-1236 (JAF/JP)        -7-

Moreover, that Dr. Torres' diagnosis of Cruz's condition may have been incorrect is not actionable under EMTALA. See id. at 143-44 (noting that "when an exercise in medical judgment produces a given diagnosis, the decision to prescribe a treatment responding to the diagnosis cannot form the basis of an EMTALA claim of inappropriate screening" and finding that "treatment based on diagnostic medical judgment [does] not violate [EMTALA]"); Brooks v. Maryland Gen. Hosp. Inc., 996 F.2d 708, 710-11 (4th Cir. 1993)(noting that [EMTALA] does not impose any duty on a hospital requiring that the screening result in a correct diagnosis"); Baber v. Hosp. Corp. of America, 977 F.2d 872, 880 (4th Cir. 1992)(noting that the "avowed purpose of EMTALA was not to guarantee that all patients are properly diagnosed, or even to ensure that they receive adequate care").  After examining Cruz, Dr. Torres consulted Cruz's private physician, Dr. Gomez, who advised administering certain medications to Cruz and that Cruz should visit Dr. Gomez's office the following morning. Even if Dr. Torres erroneously determined that further tests were unnecessary, her error amounts only to a faulty screening, which is appropriately dealt with under Puerto Rico's medical malpractice laws. Thus, the Court finds that Plaintiffs' EMTALA claim fails.

In conclusion, too often, this Court has seen plaintiffs use EMTALA to bring their medical malpractice claims to federal court in

CIVIL NO. 08-1236 (JAF/JP)      -8-

order to have a jury hear their cases.[1] In the instant case, Plaintiffs are trying to do exactly that. There is no question that Cruz had medical insurance, her own private physician, and that she was not denied admission or treatment when she arrived at the Hospital. Indeed, upon her admission to the emergency room of the Hospital, Cruz was examined by Dr. Torres in a timely manner. On reviewing the record of this case, the legislative purpose of EMTALA - to prevent the "dumping" of uninsured patients - is not implicated. EMTALA was designed to protect the uninsured. Neither EMTALA nor the First Circuit has ever stated that plaintiffs can use EMTALA as a jurisdictional door to bring to a federal court a case that is strictly a state court case. The First Circuit has repeatedly emphasized that EMTALA does not create a federal cause of action for medical malpractice.

**B.    Plaintiffs' State Law Claims**

Having dismissed Plaintiffs' federal law EMTALA claim, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law medical malpractice claims. See Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991) ("[t]he power of a federal court to hear and determine state law claims in non-diversity cases depends upon the presence of at least one substantial federal claim in the lawsuit").

---

1.    In medical malpractice suits here in Puerto Rico, there is a consistent pattern of trying to plead EMTALA to circumvent the unavailability of jury trials in civil cases.

CIVIL NO. 08-1236 (JAF/JP)     -9-

**IV.**

**CONCLUSION**

After considering the arguments presented by the parties at the hearing and the parties' supplemental briefs as to the issue of jurisdiction under EMTALA, the Court hereby **VACATES** its previous decision and **GRANTS** Defendants' motion to dismiss. The Court will enter a separate judgment dismissing with prejudice Plaintiffs' federal claims against Defendants and dismissing without prejudice Plaintiffs' state law claims.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of September, 2011.

                                            s/José Antonio Fusté
                                              JOSÉ ANTONIO FUSTÉ
                                    UNITED STATES DISTRICT JUDGE